# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHONTAY HUMPHRIES,<br><br>      Plaintiff,<br><br>v.<br><br>MILWAUKEE COUNTY, MILWAUKEE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, JUAN MUNIZ, PANG XIONG, UNKNOWN NAMED DEFENDANT 1, AND FELICE RILEY,<br><br>      Defendant. | Case No. 10-CV-99-JPS<br><br><br><br><br>ORDER |

    Plaintiff, Shontay Humphries ("Humphries"), initially filed this action in state court alleging the defendants violated her rights to procedural due process when they denied her application for child care certification based on a substantiated finding of child abuse without providing plaintiff the opportunity to refute the finding of abuse in a pre-denial hearing. The defendants then removed the action to this court based on federal question jurisdiction. After discovery occurred, the defendants filed a motion for summary judgment. For the reasons stated below, the defendants' motion for summary judgment will be granted.

1.  Legal Standard

    "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991).

"Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, in determining whether a genuine issue of material fact exists, the court must construe all reasonable inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983). However, where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," there is no genuine dispute as to any material fact because a complete failure of proof "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Where a party fails to address another party's assertion of fact, the court may deem it undisputed for purpose of the motion and may grant summary judgment if the movant is so entitled. Fed. R. Civ. P. 56(e)(2), (3); Civ. L. R. 56(b)(4).

2    Background[1]

On June 27, 2008, Humphries submitted her application for Child Care Certification to the Milwaukee County Department of Health and Human Services (the "Department"). (Defs.' Proposed Findings of Fact [DPFF] ¶ 7). Defendant Juan Muniz ("Muniz") was a child care specialist for the background check unit of the child care certification program, and he initiated the processing of Humphries's application. (DPFF ¶¶ 10, 13). As part of the process, Muniz requested information from the Bureau of Milwaukee Child Welfare ("BMCW"). (DPFF ¶ 18-19). Among the documents provided by the BMCW to Muniz was a 1988 report recounting an incident between Humphries and her niece. (Muniz Decl., Ex. B) (Docket #23-2). The report noted that in December of 1988, Humphries hit her niece in such a manner that it left a large welt across the girl's face. (*Id.*). The report also indicated that a worker for Childcare Protective Services ("CPS") visited Humphries's home, spoke with Humphries and visually examined the girl. (*Id.*). The CPS worker's report labeled the incident as substantiated child abuse. (*Id.* at 4). The parties dispute whether Humphries was aware that the CPS worker would be reporting the incident as substantiated abuse. The defendants argue Humphries had such knowledge in 1988. (DPFF ¶ 53). On the other hand, Humphries appears to claim that she first learned of the substantiated finding in October 2008, when her application for a child care certificate was denied. (Humphries Aff. ¶¶ 10-12, 17, 19, 27).

Based on the report's labeling of the incident as a substantiated finding of abuse and relying on Wis. Stat. § 48.685(4m)(a) and the Caregiver

---

[1]The following facts are not legitimately disputed by the parties, unless otherwise noted.

Background Check manual, both of which provide that the Department may not certify a provider if a determination has been made under Wis. Stat. § 48.981(3)(c)4 that the provider has abused or neglected a child, Muniz determined that Humphries's application had to be denied. (DPFF ¶ 26). Muniz was apprehensive about making this determination as Humphries had been previously certified in both 2004 and 2006. (DPFF ¶¶ 27, 30). Apparently, the BMCW failed to produce the 1988 substantiated finding as part of the background check process in 2004 and 2006. (DPFF ¶ 28). Thus, Muniz consulted with Pang Xiong ("Xiong"), his supervisor, before denying Humphries's application. (DPFF ¶ 27). Xiong approved Muniz's denial of Humphries's application and approved the language used in the denial letter sent to plaintiff on October 23, 2008. (DPFF ¶¶ 35-36).

The denial letter notified Humphries that pursuant to Wis. Stat. § 48.685(m), the "department…may not certify a day care provider under s. 48.651, …if the department…knows or should have known…that a determination has been made under s. 48.981(3)(c)4, that the person has abused or neglected a child." (DPFF ¶ 37). Eventually, Humphries requested an appeal/administrative hearing regarding the denial. (DPFF ¶ 61). At Humphries's request, the hearing was postponed on several occasions, until it was finally held on February 5, 2009. (DPFF ¶¶ 67-68). In a written decision dated February 23, 2009, the hearing examiner reversed the denial because Muniz could not produce a certified copy of the substantiated finding of abuse. (DPFF ¶73-75). The hearing examiner ordered that Humphries be reinstated to the application process. (DPFF ¶ 76). On April 1, 2009, Xiong sent a letter to the BMCW requesting that it afford the appropriate appeal rights to Humphries to allow her to address the substantiated finding of abuse. (DPFF ¶ 85). Humphries was provided a copy of this letter. (DPFF

¶ 86). On or about July 6, 2010, Muniz learned that BMCW overturned the substantiated finding of abuse. (DPFF ¶ 93). On August 10, 2010, Humphries received her certification from the State of Wisconsin Department of Children and Families Milwaukee Early Care Administration – which had taken control of the child care program. (DPFF ¶ 96). With these facts in mind, the court now turns to the issue at hand.

3.  Discussion

In this case, plaintiff argues the defendants violated her procedural due process rights when they denied her application for a child care certificate based on a substantiated finding of child abuse from 1988 without first providing her an opportunity to contest that finding. In moving for summary judgment on this claim, the defendants argue the following: (1) Humphries's claim is no longer justiciable; (2) defendants Muniz and Xiong are entitled to qualified immunity; and (3) Humphries cannot establish that Milwaukee County employed an unconstitutional policy or procedure when administering the State of Wisconsin's Child Care Program. The court will address each of these arguments in turn.

3.1  Justiciability

The defendants first argue that Humphries's claim is no longer justiciable as she received her certification as a child care provider on August 10, 2010. However, the court finds that Humphries's § 1983 action against the defendants presents a justiciable controversy, as she is alleging the deprivation of her constitutional right to due process of law. Thus, even though Humphries has since received her child care certification and may not be entitled to injunctive relief in this respect, she is still entitled to seek damages to compensate her for injuries caused by the deprivation of a

constitutional right, even in the absence of proof of any actual injury. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992).

      3.2     Qualified Immunity

Next, in support of their motion for summary judgment, defendants Muniz and Xiong argue they are entitled to qualified immunity. The doctrine of qualified immunity insulates government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In other words, the doctrine protects public officials "who act in ways they reasonably believe to be lawful," and thus leaves "ample room for mistaken judgments." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (citations omitted).

Qualified immunity claims present two questions: (1) whether the plaintiff's allegations make out a deprivation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 232. Courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Here, the court finds it most efficient to begin with the second prong, as this is a case where it is quite "plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.*

A plaintiff may overcome a claim of qualified immunity by presenting case law that "has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand." *Chan v. Wodnicki,* 123 F.3d 1005, 1007 (7th Cir. 1997). However, the mere existence of analogous case law is not sufficient to defeat a claim of qualified immunity. Rather, the decision

must demonstrate that, at the time the defendants acted, it was certain that their conduct violated the law. *See Duda v. Bd. of Educ.*, 133 F.3d 1054, 1062 (7th Cir. 1998) (indicating that the case law must "dictate" that the defendants' conduct violated the constitution). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

The plaintiff has the burden of establishing that the constitutional right was clearly established. *Nanda v. Moss*, 412 F.3d 836, 844 (7th Cir. 2005). Here, the plaintiff has not met that burden, as she has failed to identify any case clearly establishing that the defendants' conduct was unconstitutional, or that any line of cases would put the defendants on notice of such unconstitutionality. Plaintiff's chief argument in response to the defendants' defense of qualified immunity is that, at the time of the denial of Humphries's child care certification application, it was clearly established that government agencies could not give any legal consequence to a finding of abuse unless that finding had been subject to a traditional range of due process protections. Because Milwaukee County made the substantiated finding of abuse against Humphries in 1988 – a time when it did not consistently provide due process to the individuals against whom a finding was made – plaintiff argues the defendants should have been on notice that it was unconstitutional to deny Humphries' application for child care certification based on such a finding without first affording her an opportunity to refute the finding of abuse. Plaintiff has presented three cases as support for this argument – *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603 (7th Cir. 2002); *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005); and *Boyd v.*

*Owen*, 481 F.3d 520 (7th Cir. 2007). However, a careful review of these cases demonstrates that plaintiff's reliance on them is misplaced.

First, in *Doyle v. Camelot Care Centers, Inc.*, the defendants, officials of the Illinois Department of Children and Family Services ("DCFS"), "indicated"[2] the plaintiffs for medical neglect of a child in their care, recorded the determination in a state-wide registry, and disclosed these findings to plaintiffs' employers, which resulted in the plaintiffs' termination. 305 F.3d at 608. Plaintiffs made procedural due process claims against the state officials, arguing that the officials deprived them of a protected liberty interest without due process of law in their investigation and disclosure of the finding of neglect by using a credible evidence standard throughout a predominantly ex parte proceeding. *Id.* The Seventh Circuit agreed, stating that "[t]he largely ex parte process conducted under the credible evidence standard" coupled with a delay in post-deprivation proceedings, provided insufficient process to the plaintiffs. *Id.* at 619. As such, *Doyle* does not stand for the proposition asserted by plaintiff. Instead, it simply establishes that because a person has a protected liberty interest in pursuing a career of his or her choice, that person cannot be added to a child offender database unless that person was provided pre-deprivation notice and an opportunity for a hearing. *Id.*

Moreover, in *Dupuy v. Samuels*, a class of child care workers, who were indicated as perpetrators of child abuse or neglect in reports maintained on the State Central Register of the Illinois DCFS, alleged the procedures for investigating and disclosing allegations of child abuse and neglect deprived them of due process of law. 397 F.3d at 496. Like the plaintiffs in *Doyle*, the

---

[2] "Indicated" in Illinois is the equivalent of "substantiated" in Wisconsin.

*Dupuy* plaintiffs argued for a meaningful hearing prior to the entry and disclosure of an indicated finding. *Id.* at 504-08, 512-13. The Seventh Circuit first reviewed the procedures employed by the Illinois DCFS. Specifically, the Seventh Circuit examined the credible evidence standard, under which an indicated finding was made, and ultimately found that due process required equal consideration be given to both inculpatory and exculpatory evidence in determining whether credible evidence of abuse or neglect existed. *Id.* at 504-06. The court also confirmed that due process required providing an accused the opportunity to respond to the allegations before DCFS indicated and disclosed a report of child abuse. *Id.* at 507-08. As such, the *Dupuy* case does not establish that government agencies clearly violate an individual's due process rights when they deny an application for child care certification in reliance on a substantiated finding of abuse – without a pre-denial hearing. Accordingly, plaintiff's reliance on this case is also misplaced.

Lastly, plaintiff cites to *Boyd v. Owen* to support her position. In *Boyd*, the plaintiff claimed that a child welfare investigator violated his rights to due process in the investigation of a claim of child abuse and in making an indicated finding of child abuse. 481 F.3d at 522. The Seventh Circuit discussed the *Dupuy* decision, specifically, the requirement that a credible evidence determination give equal consideration to both inculpatory and exculpatory evidence. *Id.* at 525. The court then noted that *Dupuy* supported a finding that the procedures used in the defendant's investigation were constitutionally deficient. *Id.* at 525-26. However, the court determined that the *Dupuy* decision could not demonstrate a clearly established right because it did not exist when the child abuse investigation and finding occurred. *Id.*

527. Accordingly, *Boyd* does not establish that the defendants' conduct in this case clearly violated the plaintiff's due process rights.

Indeed, none of the cases cited by plaintiff deal with facts closely analogous to those of this case. The significant distinction the plaintiff fails to account for is that, unlike the defendants in *Doyle*, *Dupuy*, and *Boyd*, here, defendants Xiong and Muniz were not involved in the investigation of child abuse or in entering the substantiated finding of abuse against Humphries. Rather, Xiong and Muniz simply relied on the substantiated finding when processing Humphries's application for child care certification. And, as discussed above, *Doyle*, *Dupuy*, and *Boyd* do not clearly establish the unconstitutionality of relying on a substantiated finding when denying an applicant a child care certificate, without providing the applicant with a pre-denial opportunity to refute the finding.

Even assuming the defendants were on notice that the substantiated finding made in 1988 did not afford Humphries the process she was due under the Constitution,[3] the court still could not find – based on the case law before it – that relying on this finding without providing Humphries with a pre-denial hearing to refute the finding of abuse was a clear violation of her constitutional rights. The *Doyle-Dupuy-Boyd* trilogy, while helpful in demonstrating how the investigation of child abuse and the entering of a substantiated finding should comport with due process, cannot be said to have put the defendants in this case on notice that their conduct in denying Humphries's child care certificate was clearly in violation of the Constitution.

---

[3] It would appear that the defendants may have had such notice due to a provision in the Caregiver Background Check Manual that states "it is possible for a person not to realize that she has been identified in a substantiated finding" especially if the finding was made before 1999 when the agency did not provide due process to that individual. (Muniz Decl., Ex. 1 at 25) (Docket #23-1).

Accordingly, because Humphries cannot point to a single case establishing the clear unconstitutionality of the actions of Muniz and Xiong, the defendants are entitled to qualified immunity. The court will, therefore, grant these defendants' motion for summary judgment.

### 3.3 Municipal Liability

Humphries also alleges a policy, or *Monell*, claim against Milwaukee County (the "County"). *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).[4] To hold a defendant municipality liable under § 1983, the plaintiff must demonstrate that a constitutional deprivation was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by officers." *Id.* at 690. There must be a direct causal link between the alleged unconstitutional deprivation and the municipal policy or custom at issue. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). The plaintiff has provided no evidence to support her claim that a municipal custom or policy caused her injuries. Accordingly, her policy claim must fail.

Moreover, under cases such as *Bethesda Lutheran Homes and Services, Inc. v. Leean,* 154 F.3d 716, 718 (7th Cir. 1998), a municipality "cannot be held liable under section 1983 for acts that it did under the command of state or federal law." Here, Wis. Stat. § 48.685(4m)(a) prohibits a county department from certifying a child day care provider if there has been a determination that the provider abused a child. Thus, the question raised by the plaintiff's

---

[4]Humphries has also named the Milwaukee County Department of Health and Human Services as a defendant in this matter. However, it does not appear that the Department is a suable entity separate from the County as its powers and duties are exercised under the jurisdiction of the county board of supervisors. *See* Wis. Stat. § 46.215(2m)(a). Therefore, plaintiff's claims against the Department are effectively claims against the County. Even if the Department was a suable entity, it would be redundant to sue both the County and the Department. Therefore, the court will simply refer to the County in its analysis of plaintiff's *Monell* claim.

claim against the County is whether, assuming a constitutional deprivation occurred, this is an example of a government entity taking advantage of an ambiguous statute in order to justify its own unconstitutional actions or whether the state's mandate left the entity with no constitutional alternative. The court concludes it is the latter. Wisconsin statute 48.685(4m)(a) gives the County no discretion to overlook a substantiated finding of abuse. Thus, the County was doing no more than implementing a state law directive. It was not making its own policy choice. Moreover, to the extent that Humphries is suggesting that the County violated a constitutional right by failing to allow her a chance to rebut the substantiated finding, Humphries fails to acknowledge that the County did not control that finding. It was the BMCW that made the finding, and only the BMCW that could reverse that finding.

In her response brief to the plaintiff's motion for summary judgment, plaintiff appears to base her *Monell* claim on the actions of the head of the Milwaukee Department of Health and Human Services, Felice Riley ("Riley").[5] Specifically, plaintiff argues that Riley was a person with final decision making authority, and she made the decision to refuse to re-certify Humphries. Therefore, plaintiff claims municipal liability is appropriate. However, this assertion appears nowhere in Humphries's complaint. Thus, Humphries has disregarded the fundamental rule that a plaintiff may not amend her complaint in her response brief. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (citing *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) and *Car Carriers,*

---

[5]Plaintiff also states a claim against Riley in her official capacity as head of the Milwaukee County Department of Health and Human Services. (Compl. ¶ 10). However, a claim against Riley in her official capacity is the same as a claim against the County. *See Monell*, 436 U.S. at 690, n. 55. As such, Riley is a redundant defendant.

*Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)). What is more, Humphries provides no real support for this argument. Accordingly, Humphries's claim against the County fails in its entirety and the County is entitled to summary judgment.

Accordingly,

IT IS ORDERED that defendants' motion for summary judgment (Docket #19) be and the same is hereby GRANTED as to all of plaintiff's claims; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED on its merits together with costs as taxed by the clerk of the court.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of November, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge